UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 24-00264-10 |
| | * | |
| VERSUS | * | DISTRICT JUDGE DOUGHTY |
| | * | |
| KIMONI MCMURRAY, a.k.a. "KiMoney" | * | MAGISTRATE JUDGE MCCLUSKY |
| | * | |

**UNITED STATES' NOTICE OF INTENT TO INTRODUCE EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 404(b)**

NOW INTO COURT, through the United States Attorney and the undersigned Assistant United States Attorney, comes the United States, which submits the following notice:

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

In January of 2024, the Drug Enforcement Administration began investigating Shedrick Green, III for the distribution of methamphetamine and cocaine in and around Ruston, Louisiana. During the investigation, agents identified Cornelius Boston as one methamphetamine source of supply of Green.

In September and October of 2024, agents obtained court-ordered Title III wiretaps on cellular telephone numbers utilized by Boston. While monitoring communications on cellular telephone number (904) 705-1407, agents intercepted communications between Boston and **Kimoni McMurray, a.k.a. "KiMoney"** (hereinafter "the defendant"). The intercepted communications suggested the defendant was obtaining distribution-quantities of methamphetamine and marijuana from Boston.

On March 19, the defendant was one of fourteen defendants charged in a Superseding Indictment with Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. 841(a)(1), (b)(1)(A)(viii), and 846.[1] The conspiracy was alleged to have occurred "[b]eginning on or about January 1, 2022 and continuing through on or about November 27, 2024." [Rec. Doc. 178]. An arrest warrant was issued that same day.[2]

On April 1, 2025, law enforcement attempted to execute the aforementioned arrest warrant. Law enforcement located the defendant traveling in his red Chevrolet Tahoe. A deputy with the Lincoln Parish Sheriff's Office attempted to conduct a traffic stop, but the defendant fled. The deputy pursued the Tahoe and observed items being tossed from the vehicle.

Law enforcement stopped the defendant's vehicle shortly thereafter and took the defendant into custody. The deputy returned to the area where he saw items being tossed from the vehicle. He located a clear plastic baggie containing suspected marijuana, a Crown Royal bag, and a Charter Arms revolver, Model: Pink Lady, caliber: .38 special. Law enforcement then searched the defendant's vehicle. They located marijuana, methamphetamine (in both powder and pill form), a digital scale, a gray Nokia cell phone, and a black TCL cell phone.

The deputy swabbed the weapon for DNA, and law enforcement obtained a search warrant the defendant's DNA. The swabs were submitted to the crime lab for analysis, the results of which confirmed the defendant's DNA was present on the firearm.

---

[1] An original indictment was filed on December 11, 2024. In that indictment, only Green and Boston were listed as defendants.
[2] A Second Superseding Indictment was filed on July 2, 2025.

Law enforcement also obtained federal search warrants for the cell phones. During a forensic extraction of the black TCL cell phone, agents located text messages (that occurred both during and after the charged conspiracy) indicative of drug trafficking.

Trial in this matter is set for February 23, 2026. The United States seeks to introduce at trial evidence from the traffic stop on April 1, 2025. Specifically, the United States seeks to introduce evidence of the drugs, firearm, digital scale, the cell phones, and specific communications extracted from the black TCL cell phone.[3] As will be demonstrated below, the United States submits this evidence is relevant to show intent. Fed. R. Evid. 404(b).

## RELEVANT LAW AND ANALYSIS

Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion that person acted in accordance with the character. Fed. R. Evid. 404(a). The evidence may be admissible for another purpose, however, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b).

The Fifth Circuit conducts its substantive Rule 404(b) inquiry under the two-prong test from *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (*en banc*). First, the extrinsic evidence must be relevant to an issue other than the defendant's character. *Id.* at 911. Second, the evidence must possess probative value that is not substantially

---

[3] The United States submits any communications on the TCL phone that occurred during the charged conspiracy are intrinsic of the charged conduct and are admissible without any further notice requirement. By filing the instant Notice, the Government seeks to introduce evidence of communications that occurred outside the period of the charged conspiracy.

3

outweighed by its undue prejudice and must meet the other requirements of Federal Rule of Evidence 403. *Id.*

### A. First Prong: Relevancy

The standard used in the first prong's relevancy inquiry is the same as the one used in Federal Rule of Evidence 401, namely, whether the evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 411; *Beechum*, 582 F.2d at 911

In a drug-trafficking case, a not-guilty plea raises the question of intent and justifies the admission of evidence under Fed. R. Evid. 404(b). *United States v. Pompa,* 434 F.3d 800, 805 (5th Cir.2005); *see also United States v. Roberts,* 619 F.2d 379, 382–83 (5th Cir.1980) (not-guilty plea raises the issue of intent in a conspiracy case). Although acts admissible under Fed. R. Evid. 404(b) generally occur prior to the charged crime, evidence of subsequent acts may also be admitted. *United States v. Osum*, 943 F. 2d 1994, 1404 n. 7 (5th Cir. 1991). The Fifth Circuit has explicitly stated that its prior decisions "clearly allow for evidence of 'bad acts' subsequent to the subject matter of the trial for the purpose of demonstrating intent." *United States v. Peterson*, 244 F. 3d 385, 392 (5th Cir. 2001).

Here, the types of drugs recovered from the defendant's vehicle and manner in which they were possessed are relevant to the charged conduct. The defendant was intercepted on a Title III wiretap discussing obtaining distribution-quantities of methamphetamine and marijuana from the Boston. At the time of his arrest, he was found in possession of methamphetamine, marijuana, and items consistent with

distribution (i.e., a digital scale, firearm, and multiple cell phones).  Such evidence is relevant to showing the defendant's intent to possess and distribute the methamphetamine that was discussed on the Title III wiretaps.

      B.      **Second Prong: Probative Value vs. Undue Prejudice**

For purposes of the second *Beechum* prong, a similarity between the elements of a prior extrinsic offense and the elements of the charged offense may enhance the probative value of the extrinsic evidence. *Thomas*, 294 Fed. App'x at 130; *United States v. Bermea*, 30 F.3d 1539, 1562 (5th Cir. 1974).  A similarity between the offenses, however, also increases the risk of prejudice. *Bermea*, 30 F.3d at 1562.  As such, when the Government adduces strong evidence of intent, extrinsic offense evidence should be more readily excluded. *Id.*  Inversely, when the direct evidence of intent is slight, the probative value of extrinsic evidence is enhanced. *Thomas*, 294 Fed. App'x at 130; *United States v. LeBaron*, 156 F.3d 621, 625 (5th Cir. 1998).

The Fifth Circuit has frequently held that extrinsic evidence of past drug offenses is "more probative than prejudicial." *United States v. Harris*, 923 F.2d 1529, 1534 (5th Cir. 1991). This is a consequence of Rule 403, which "tips the balance in favor of the admission of relevant evidence, permitting exclusion only if the evidence's probative value is *substantially* outweighed by the danger of unfair prejudice." *Bermea*, 30 F.3d at 1562.  Finally, limiting instructions by the trial court mitigate the possibility of unfair prejudice, particularly when given immediately after the extrinsic offense evidence is admitted. *United States v. Miller*, 520 F.3d 504, 512 (5th Cir. 2008); *Broussard*, 80 F.3d at 1040.

Here, the probative value of the evidence obtained at the time of the defendant's arrest outweighs any dangers of undue prejudice. The evidence was obtained less than five months after the intercepted communications between the defendant and Boston (wherein they discussed marijuana and methamphetamine). And, as stated above, the types of drugs recovered from the vehicle and manner in which they were possessed are the exact types discussed on the Title III wiretaps. Such evidence is not unduly prejudicial.

## CONCLUSION

The United States respectfully requests this Court order that evidence seized at the time of the defendant's arrest on April 1, 2025, be admissible at trial.

Respectfully submitted,

ZACHARY A. KELLER
United States Attorney

BY:   /s/ Jessica D. Cassidy
JESSICA D. CASSIDY, LA Bar No. 34477
Assistant United States Attorney